UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE SMITH,

      Plaintiff,                                                           Hon. Janet T. Neff

v.                                                                                 Case No. 1:14-cv-1240

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 52 years of age on his alleged disability onset date. (Tr. 131). He successfully completed high school and worked previously as a welder, tumbler operator, cook, inspector, and assembler. (Tr. 21, 35). Plaintiff applied for benefits on March 7, 2012, alleging that he had been disabled since September 1, 2008, due to hepatitis C. (Tr. 131-37, 154). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 57-117). On June 26, 2013, Plaintiff appeared before ALJ Lawrence Blatnik with testimony being offered by Plaintiff and a vocational expert. (Tr. 27-65). In a written decision dated July 19, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 15-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]  If the Commissioner can make a

---

[1]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c),

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

      The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

      The ALJ determined that Plaintiff suffered from: (1) hepatitis C; (2) diabetes; (3) depression; and (4) a history of alcohol abuse, severe impairments that whether considered alone or

---

    416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-19). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform medium work subject to the following limitations: (1) he can lift 50 pounds occasionally and 25 pounds frequently; (2) during an 8-hour workday, he can sit for 6 hours and stand/walk for 6 hours; (3) he requires ready access to restroom facilities; (4) he can perform only simple, unskilled work with a SVP rating of 1 or 2;[2] (5) he can understand, remember, and carry out only short, simple instructions; and (6) he is limited to work requiring only brief and superficial contact with the public and routine work that does not require frequent significant changes or adaptations. (Tr. 19).

A vocational expert testified that if limited to the extent reflected in the ALJ's RFC, Plaintiff would still be able to perform his past relevant work as a welder and tumbler operator. (Tr. 57-61). The vocational expert further testified that if Plaintiff were further limited in that he could only lift 20 pounds occasionally and 10 pounds frequently, he would still be able to perform his past relevant work as a welder. (Tr. 61-62). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

---

[2] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on December 21, 2015). A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only." A job with an SVP rating of two corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month." *Id.*

**I.	Plaintiff's RFC**

Plaintiff asserts a single challenge to the ALJ's RFC determination. In his RFC assessment, the ALJ concluded that Plaintiff "requires ready access to restroom facilities." (Tr. 19). Plaintiff argues that his "urinary frequency/nocturia" imposes far greater limitations on his ability to function than the ALJ acknowledged. Specifically, Plaintiff alleges that as a result of his urinary difficulties he needs to use the bathroom "more than ten" times daily which would render him unavailable to work for as long as 90 minutes daily. (Tr. 52). While the record indicates that Plaintiff has experienced urinary frequency and nocturia, the record does not support Plaintiff's testimony. Instead, the record indicates that Plaintiff's urinary difficulties are largely the result of personal choices made by Plaintiff rather than an intractable physical ailment.

On September 12, 2011, Plaintiff complained of "excess urine per day." (Tr. 255). The doctor noted, however, that Plaintiff "tends to drink 10 cups of coffee per day, drinks 2-3 bottles of 20 oz. pop per day, [and] does not drink water at all." (Tr. 255). Plaintiff was instructed "to wean off from coffee, as well [as] drink more water for better urine control." (Tr. 257). Treatment notes dated March 1, 2012, indicate that Plaintiff "tends to drink pop at least 4x/week, drinks coffee throughout the day then has to get up in night time for urine." (Tr. 210). Plaintiff was instructed to "work on life style habits, cut down intake of coffee and pop in PM times, drink more water through the day." (Tr. 212). Likewise, following an August 13, 2012 examination, Plaintiff was instructed to treat his nocturia with "lifestyle modification," specifically "cessation of PM caffeine." (Tr. 421).

Plaintiff argues that he suffers from diabetes and an enlarged prostate, both of which can result in frequent urination. However, as Defendant correctly observes, the mere diagnosis of a condition or impairment sheds no light on the extent to which such limits an individual. *See*, *e.g.,*

*Hill v. Commissioner of Social Security*, 560 Fed. Appx. 547, 551 (6th Cir., Mar. 27, 2014) ("disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it"). There is simply nothing in the medical record supporting Plaintiff's argument that his urinary frequency difficulties are work preclusive or impose greater limitation than recognized by the ALJ. Rather, it appears that control of this particular problem is within Plaintiff's control. In sum, the ALJ's RFC determination is supported by substantial evidence. Accordingly, this argument is rejected.

II. **Medical Opinion Evidence**

On August 9, 2012, Dr. David Woodliff completed a report concerning Plaintiff's ability to perform work-related physical activities. (Tr. 415-18). Specifically, the doctor reported the following: (1) during an 8-hour workday, with normal break periods, Plaintiff can sit, stand, walk, and sit/stand for 8 hours each; (2) Plaintiff can occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds; (3) Plaintiff can frequently perform grasping, manipulation, and pushing/pulling activities; (4) Plaintiff can perform repetitive movements with both lower extremities; (5) Plaintiff can frequently bend, twist, squat, kneel, crouch, crawl, stoop, climb stairs, and reach above shoulder level; and (6) Plaintiff experiences no sensory limitations. (Tr. 415-17). The doctor also reported, however, that Plaintiff was "likely to be absent from work as a result of [his] impairments or treatments" two days each month. (Tr. 417).

The ALJ afforded "some weight" to Dr. Woodliff's opinion, but also concluded that the doctor's "estimate that the claimant would be absent from work about two times per month to be an overstatement of his projected absences that is not consistent with, or supported by, Dr.

Woodliff's treatment records or other medical evidence." (Tr. 20). Plaintiff argues that he is entitled to relief because the ALJ failed to properly evaluate Dr. Woodliff's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

With the exception of his statement that Plaintiff would likely be absent from work two days each month, Dr. Woodliff's opinion is consistent with the ALJ's RFC assessment. The doctor indicated that Plaintiff suffered "no muscle weakness or nerve weakness" and was "not physically disabled." (Tr. 418). The doctor further stated that Plaintiff is "only restricted by his anxieties from his severe depression." (Tr. 418). The medical record, however, does not support the contention that Plaintiff's depression or other emotional impairments would cause him to be absent from work two days monthly.

On November 21, 2011, Dr. Woodliff characterized Plaintiff's "symptom severity" as "mild" and noted that Plaintiff's depression was "getting better" as Plaintiff was in "excellent compliance" with treatment directives. (Tr. 230). Treatment notes dated December 29, 2011, indicate that Plaintiff was experiencing "mild" depression and "no" anxiety. (Tr. 224). On April 19, 2012, Plaintiff stated that he "does not feel depressed." (Tr. 198). Treatment notes dated May 15, 2012, indicate that Plaintiff was experiencing only "slight" anxiety. (Tr. 287). There is simply no support in the medical record for the opinion that Plaintiff's depression or anxiety will force him

to be absent from work two days per month. The ALJ's assessment of Dr. Woodliff's opinion is supported by substantial evidence. Accordingly, this argument is rejected.

**III.     Plaintiff's Credibility**

At the administrative hearing, Plaintiff testified that he was far more limited than the ALJ recognized. When asked, "what's the main problem that you have that you feel would prevent you from working in a regular job?," Plaintiff responded, "lack of sleep and going to the bathroom all the time." (Tr. 39-40). Plaintiff testified that he sleeps 2-5 hours each day and must use the bathroom more than ten times daily. (Tr. 52-53). The ALJ found that Plaintiff was "not entirely credible" and, therefore, discounted his subjective allegations. (Tr. 19-21). Plaintiff asserts that he is entitled to relief because the ALJ's rationale for discounting his allegations is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative

law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

In support of his credibility determination, the ALJ noted that the medical evidence did not support Plaintiff's testimony concerning his need to use the bathroom so frequently. (Tr. 20). The ALJ also noted that Plaintiff's treating physician, Dr. Woodliff, concluded that Plaintiff was capable of performing work activities at a level consistent with the ALJ's RFC determination. (Tr. 20). As discussed above, these determinations are supported by substantial evidence. The ALJ also noted that the results of numerous physical and mental examinations were inconsistent with Plaintiff's allegations that he was unable to work. (Tr. 20-21). This conclusion is also supported by substantial evidence. (Tr. 224, 230, 279-82, 296-98, 303, 387, 434, 441-73).

The ALJ also observed that Plaintiff "received unemployment benefits for about eight months after his alleged onset date, which is indicative of someone willing and able to work." (Tr. 20-21). Finally, the ALJ noted that "the medical record also indicates [Plaintiff] has not been fully compliant with his medical treatment. He has reported to his medical sources numerous times that he had not taken his medication as prescribed." (Tr. 21). Plaintiff argues that the ALJ's reliance on his receipt of unemployment benefits was inappropriate. Plaintiff also argues that the ALJ failed to consider whether his refusal to take his medication as prescribed was the result of an inability to pay for such. Neither argument is persuasive.

While the Court recognizes from a practical standpoint why Plaintiff would simultaneously seek to recover benefits from two distinct programs, the fact remains that courts have consistently held that receipt of unemployment benefits is inconsistent with a claim of disability and, moreover, constitutes a valid rationale for rejecting a claimant's subjective allegations. *See, e.g.,*

*Bastian v. Commissioner of Social Security*, 2014 WL 5073606 at *9 (W.D. Mich., Oct. 3, 2014) (collecting cases). Thus, the ALJ did not err by mentioning Plaintiff's receipt of unemployment benefits. As for Plaintiff's occasional failure to take his medications as prescribed, such is documented in the record. (Tr. 197-98, 207, 209, 211, 242, 376, 392). Moreover, there is no suggestion in the record that Plaintiff was not taking his medications as prescribed due to financial circumstances. The ALJ's credibility assessment is supported by substantial evidence. Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: December 28, 2015
/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge